IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

United States Courts
Southern District of Texas
FILED

DEC 0 3 2025

Nathan Ochsner, Clerk of Court

BRIDGETT M. MOORE,

    Plaintiff,

v.

    Civil Action No. 4:25cv05476

WIRELESS CCTV LLC and
ADAM HAWORTH,

    Defendants.

PLAINTIFF'S AMENDED COMPLAINT

TO THE HONORABLE JUDGE OF THIS COURT:

    Plaintiff, BRIDGETT M. MOORE, appearing pro se, files this Amended Complaint against Defendants WIRELESS CCTV LLC ("WCCTV") and ADAM HAWORTH, and respectfully alleges as follows:

I. PARTIES

1.    Plaintiff, BRIDGETT M. MOORE ("Plaintiff" or "Moore"), is an individual residing in Harris County, Texas. At all relevant times, Plaintiff was employed by WCCTV as a Regional Account Manager for the Houston region.

2.    Defendant WIRELESS CCTV LLC ("WCCTV") is a foreign limited liability company doing business in Texas. WCCTV may be served through its registered agent, Corporation Service Company, at 211 E. 7th Street, Suite 620, Austin, Texas 78701.

3.    Upon information and belief, WCCTV employed more than 15 employees nationwide and more than 1 employee in Texas during the relevant period, making it subject to federal and state employment laws, including ERISA, COBRA, the FLSA, and the Texas Labor Code.

4.    Defendant ADAM HAWORTH ("Haworth") is an individual and, upon information and belief, the President of WCCTV's U.S. operations during the relevant period. At all times relevant to this Complaint, Haworth personally participated in, directed, approved, or knowingly

allowed the retaliatory, fraudulent, and unlawful conduct described herein. He may be served at an address to be determined in discovery.

II. JURISDICTION AND VENUE

5. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiff asserts claims arising under federal law, including the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 215(a)(3), the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1140, and the Consolidated Omnibus Budget Reconciliation Act ("COBRA"), 29 U.S.C. § 1166.

6. This Court has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367 because those claims arise out of the same nucleus of operative facts as the federal claims.

7. Venue is proper in the Southern District of Texas, Houston Division, under 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this judicial district, and Defendants conducted business and employed Plaintiff within this district.

8. Defendant WCCTV removed this case from the 80th Judicial District Court of Harris County, Texas, after Plaintiff filed her First Amended Petition.

9. WCCTV was served with Plaintiff's lawsuit on October 15, 2025, but failed to file a timely answer or Rule 12 motion within the twenty-day deadline, resulting in a missed responsive pleading deadline prior to removal.

III. BACKGROUND FACTS AND GENERAL ALLEGATIONS

A. Hiring and Promised Compensation

10. Plaintiff was recruited by WCCTV during late 2023 and accepted the position of Regional Account Manager based on explicit representations that her compensation would consist of a $70,000 base salary plus up to $70,000 in commissions and bonuses, yielding an On-Target Earnings ("OTE") opportunity of $140,000 annually.

11. WCCTV promised Plaintiff that commissions would be paid monthly and that a detailed compensation plan would follow.

12. Plaintiff relied on WCCTV's representations when accepting employment and performing her duties.

B. FY2024 Compensation Plan Concealment

13.    Plaintiff began employment on October 25, 2023. However, despite repeated assurances, WCCTV did not provide Plaintiff with the FY2024 compensation plan until January 14, 2024.

14.    WCCTV attempted to apply the FY2024 plan retroactively to Plaintiff's start date, despite withholding the written terms for eighty-two (82) days.

15.    Plaintiff began generating Integrated Revenue in December 2023 and January 2024. WCCTV accepted and benefitted from this revenue even though no commission terms had been disclosed to Plaintiff.

16.    WCCTV's delay prevented Plaintiff from understanding or negotiating essential terms of her compensation and allowed WCCTV to manipulate the calculation and timing of commission payments.

C. FY2025 Plan Withheld for Over a Year

17.    Throughout 2024 and 2025, Plaintiff repeatedly asked WCCTV for the FY2025 written compensation plan. WCCTV refused to provide it.

18.    Without disclosure or agreement, WCCTV unilaterally imposed a $2,500 commission cap for FY2025 and retroactively applied it to Plaintiff's earned commissions for August and September 2024.

19.    By withholding the FY2025 plan, WCCTV prevented Plaintiff from understanding her compensation or challenging unlawful pay practices.

20.    WCCTV's refusal was intentional and strategic, constituting concealment and wage suppression.

D. Protected Activity and Wage Complaints

21.    On multiple occasions in 2024, Plaintiff raised concerns regarding unpaid commissions, inaccurate commission calculations, and improper caps.

22.    On or about October 24, 2024, Plaintiff submitted a formal written wage complaint asserting that she was the procuring cause of multi-year accounts for which WCCTV continued to receive revenue, while unlawfully withholding her commissions.

23.    Plaintiff's complaints were protected under Texas Labor Code Chapter 61 and the FLSA.

E. Medical Leave and Benefit Interference

24. In late 2025, Plaintiff went on physician-approved medical leave and provided continuous documentation to WCCTV.

25. WCCTV never requested a return-to-work release from Plaintiff's physician, confirming Plaintiff remained on active medical leave.

26. During this period, WCCTV interfered with Plaintiff's insurance coverage, returned her premium payment without explanation, and issued a COBRA notice falsely stating "reduction in hours" as the qualifying event.

F. Filing of Lawsuit and WCCTV's Missed Deadline

27. Plaintiff filed suit in Harris County on or about October 7, 2025. WCCTV was served on October 15, 2025.

28. WCCTV failed to file an answer or Rule 12 motion by the state-court deadline. Instead, WCCTV attempted to remove the case to federal court after the expiration of its response period.

G. FY2026 Plan and Post-Litigation Retaliation

29. On November 4–5, 2025, Plaintiff notified WCCTV she would not sign the undisclosed FY2026 compensation plan while on medical leave.

30. Within hours of Plaintiff's refusal:
    a. WCCTV returned her insurance premium payment;
    b. WCCTV terminated her insurance coverage;
    c. WCCTV issued a false COBRA notice;
    d. WCCTV ceased communication with Plaintiff; and
    e. WCCTV pressured Plaintiff to sign retroactive compensation documents.

31. WCCTV simultaneously implemented a new $1,500 commission cap for FY2026, further reducing Plaintiff's earning potential.

32. The timing and nature of these actions form the core of Plaintiff's retaliation, wage, ERISA, and COBRA claims.


IV. SECTION A — PATTERN OF COMPENSATION FRAUD & WAGE MANIPULATION

33. Plaintiff alleges that Defendants Wireless CCTV LLC ("WCCTV") and Adam Haworth engaged in a multi-year pattern of deliberate compensation manipulation designed to suppress Plaintiff's earnings, avoid paying earned commissions, and retroactively impose unfavorable

terms only after Plaintiff demonstrated strong sales performance and became a high-earning employee.

34.    Beginning in FY2024 and continuing through FY2026, Defendants implemented a consistent scheme of undisclosed caps, concealed compensation terms, unilateral pay reductions, and retroactive changes, all of which were executed without Plaintiff's written agreement and in violation of Texas wage law, basic contract principles, and the implied covenant of good faith and fair dealing.

35.    WCCTV withheld the FY2024 written compensation plan until January 14, 2024, eighty-two (82) days after Plaintiff began performing under it. Despite this delay, WCCTV attempted to apply the plan retroactively to October 25, 2023, depriving Plaintiff of the opportunity to understand the terms under which she was being paid and enabling WCCTV to later manipulate commission outcomes.

36.    For FY2025, WCCTV never provided Plaintiff with any written compensation plan at all, despite more than a year of documented written requests from Plaintiff seeking clarification on how her commissions were being calculated. Nevertheless, WCCTV unilaterally imposed a $2,500 monthly cap on commissions and retroactively applied that cap to Plaintiff's earned commissions for August and September 2024. WCCTV's withholding of the FY2025 plan was intentional and strategic, designed to conceal the unlawful pay modifications, prevent Plaintiff from understanding the compensation structure, and suppress earned commissions.

37.    For FY2026, WCCTV further reduced Plaintiff's earning potential by imposing a $1,500 monthly cap and presenting Plaintiff with yet another undisclosed, retroactive compensation plan—this time while Plaintiff was on physician-approved medical leave and after WCCTV had been served with this lawsuit. WCCTV demanded Plaintiff sign a DocuSign agreement immediately, despite refusing to provide FY2025 documentation for over a year. This coercive demand, made only after litigation commenced, evidences WCCTV's attempt to fabricate a post-hoc paper trail to justify prior unlawful compensation practices.

38.    This multi-year pattern demonstrates willful wage suppression, intentional concealment of material compensation terms, bad-faith compensation practices, and a calculated effort by WCCTV and Haworth to deprive Plaintiff of the benefit of her work and her original compensation agreement.

## V. SECTION B — POST-LITIGATION RETALIATION TIMELINE

39.    Immediately after Plaintiff filed this lawsuit and WCCTV was served on October 15, 2025, Defendants initiated a series of retaliatory actions closely tied to Plaintiff's protected activity, her wage complaints, and her refusal to sign the undisclosed FY2026 compensation plan.

40.    On November 4–5, 2025, Plaintiff notified WCCTV in writing that she would not sign the FY2026 compensation plan while on medical leave and without reviewing the plan's terms. Within mere hours of Plaintiff's refusal, WCCTV executed multiple retaliatory actions:
   a. WCCTV returned Plaintiff's health-insurance premium payment without explanation;
   b. WCCTV terminated Plaintiff's health-insurance benefits despite Plaintiff being on active, physician-approved medical leave;
   c. WCCTV issued a COBRA notice falsely claiming "reduction in hours," a qualifying event that was knowingly incorrect;
   d. WCCTV ceased responding to Plaintiff's payroll, benefits, and commission inquiries; and
   e. WCCTV escalated hostile communication patterns, stopped providing documentation, and shifted HR responsibilities away from Plaintiff's access.

41.    Defendants subsequently pressured Plaintiff to sign a retroactive FY2026 DocuSign agreement—documentation Plaintiff had repeatedly requested for FY2025 and was intentionally denied. Defendants made this demand only after litigation began, demonstrating a retaliatory motive designed to create a fabricated justification for prior pay reductions.

42.    The timing and nature of these actions constitute direct evidence of retaliation under Texas law, the FLSA's anti-retaliation provision, and ERISA § 510, as well as interference with Plaintiff's statutory and contractual rights.


## VI. SECTION C — FY2025 PLAN NON-DISCLOSURE & INTENTIONAL CONCEALMENT

43.    Throughout 2024 and 2025, Plaintiff made repeated written requests to WCCTV asking for disclosure of the FY2025 compensation plan. WCCTV refused to provide it at every opportunity.

44.    This refusal was deliberate and calculated. By withholding the plan:
   a. WCCTV prevented Plaintiff from understanding how her commissions were being calculated;
   b. WCCTV concealed that it had unilaterally capped commissions at $2,500 per month;
   c. WCCTV concealed its retroactive application of that cap to already-earned commissions; and
   d. WCCTV prevented Plaintiff from contesting illegal pay practices.

45.    Defendants continued to enforce the undisclosed FY2025 plan against Plaintiff despite never providing written terms, violating both the Texas Payday Act and fundamental contract principles.

46.    WCCTV's refusal to disclose the FY2025 plan constitutes concealment, breach of implied-in-fact contract, breach of the duty of good faith, and constructive fraud.

## VII. SECTION D — EMOTIONAL DISTRESS & ECONOMIC ABUSE

47.    Defendants' conduct caused Plaintiff substantial emotional distress, financial instability, and mental suffering. Defendants:
   a. terminated Plaintiff's insurance during active medical leave;
   b. returned her premium payment without explanation;
   c. interfered with her ability to obtain medical care;
   d. withheld commissions that Plaintiff depended upon for income;
   e. ignored her repeated pleas for clarity on pay and benefits;
   f. created a hostile and retaliatory work environment; and
   g. caused severe anxiety and emotional trauma during a vulnerable medical period.

48.    The financial coercion and retaliation were designed to punish Plaintiff for asserting her rights, pressure her into abandoning her wage claims, and interfere with her ability to pursue litigation.

49.    Plaintiff seeks damages for mental anguish and emotional distress as permitted under Texas law, the FLSA, and federal retaliation statutes.

## VIII. SECTION E — PROCURING CAUSE & PRE-DISCLOSURE REVENUE

50.    Plaintiff began generating Integrated Revenue in December 2023 and January 2024 during her ramp period. WCCTV benefitted from this revenue while simultaneously withholding the FY2024 compensation plan until January 14, 2024.

51.    Under the Texas procuring-cause doctrine:
   a. Commissions vest when the employee is the procuring cause of the business;
   b. Employers may not retroactively impose commission caps or restrictions after the work is performed; and
   c. Revenue generated prior to disclosure of commission terms belongs to the salesperson by law.

52.    WCCTV's late delivery of the FY2024 plan, combined with undisclosed arrears schedules, retroactive changes, and intentional withholding of FY2025 documentation, constitutes wage theft, breach of contract, and unjust enrichment.

53.    Plaintiff earned commissions beginning in December 2023, and Defendants' manipulative compensation practices unlawfully deprived her of these earned wages.

## IX. CAUSES OF ACTION

## COUNT 1 — BREACH OF CONTRACT

(Against WCCTV)

54. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

55. Plaintiff and WCCTV entered into a valid and enforceable employment agreement, consisting of Plaintiff's offer letter, the FY2024 compensation plan, WCCTV's commission representations, and WCCTV's established compensation practices.

56. WCCTV promised Plaintiff a base salary of $70,000 and up to $70,000 in annual commissions/bonuses, with commissions calculated monthly based on Plaintiff's sales performance.

57. WCCTV further represented that Plaintiff would receive a written compensation plan detailing commission terms and that commissions would be paid according to the plan.

58. WCCTV breached this agreement by:
   a. failing to timely provide the FY2024 compensation plan;
   b. retroactively applying undisclosed commission terms;
   c. failing to provide any written FY2025 plan;
   d. unilaterally imposing commission caps without Plaintiff's agreement;
   e. retroactively applying the FY2025 cap to previously earned commissions;
   f. altering compensation terms after the work was performed; and
   g. withholding commissions that Plaintiff earned as the procuring cause.

59. As a direct and proximate result of WCCTV's breach, Plaintiff suffered lost wages, lost commissions, and additional damages in an amount to be determined at trial.


COUNT 2 — BREACH OF IMPLIED-IN-FACT CONTRACT / PROMISSORY ESTOPPEL
(Against WCCTV)

60. Plaintiff incorporates all preceding paragraphs.

61. WCCTV made repeated assurances and promises to Plaintiff regarding her compensation structure, monthly commission payments, earning potential, and the existence of written plans governing commission calculations.

62. Plaintiff reasonably relied on WCCTV's promises when accepting employment, performing her duties, generating revenue, and building multi-year customer relationships for WCCTV's benefit.

63. WCCTV intended that Plaintiff rely on its promises, including promises regarding commissions, payment timing, plan disclosure, and commission structures.

64. WCCTV breached the implied-in-fact contract by:
   a. withholding material compensation terms;
   b. altering commission structures without disclosure;
   c. failing to provide promised documentation;
   d. reducing compensation retroactively; and
   e. preventing Plaintiff from understanding the terms of her pay.

65. Alternatively, to the extent no enforceable contract existed for FY2025 or FY2026 due to WCCTV's refusal to disclose terms, WCCTV is liable under promissory estoppel because:
   a. Plaintiff relied on WCCTV's promises to her detriment;
   b. Plaintiff's reliance was foreseeable and reasonable; and
   c. injustice can only be avoided by enforcing the promises.

66. Plaintiff suffered damages including unpaid wages, unpaid commissions, and reliance damages.

## COUNT 3 — QUANTUM MERUIT / UNJUST ENRICHMENT
(Against WCCTV)

67. Plaintiff incorporates all preceding paragraphs.

68. Plaintiff provided valuable services to WCCTV, including generating sales, producing Integrated Revenue, securing multi-year contracts, servicing accounts, and representing WCCTV's products in her region.

69. WCCTV knowingly accepted and benefitted from Plaintiff's work.

70. Plaintiff had a reasonable expectation of being compensated pursuant to the compensation promises and industry standards.

71. WCCTV unjustly retained the benefits of Plaintiff's labor by withholding earned commissions, withholding plan terms, and applying retroactive caps to avoid payment.

72. Plaintiff is entitled to the reasonable value of her services and disgorgement of any unjust benefits retained by WCCTV.

## COUNT 4 — PROCURING CAUSE DOCTRINE
(Against WCCTV)

73. Plaintiff incorporates all preceding paragraphs.

74.    Under Texas law, a salesperson is entitled to commissions on all sales for which she is the procuring cause, including revenue generated after separation or after the plan year, unless an express agreement states otherwise.

75.    Plaintiff originated and was the procuring cause of multiple multi-year accounts for which WCCTV continues to receive revenue.

76.    Plaintiff's efforts directly produced revenue beginning December 2023 and continuing through 2024–2025.

77.    WCCTV's retroactive commission caps, delayed plan disclosures, and withheld plans violated the procuring-cause doctrine.

78.    WCCTV continues to benefit from Plaintiff's accounts without paying her the commissions she earned.

79.    Plaintiff is entitled to all commissions owed for accounts she originated.


COUNT 5 — VIOLATION OF TEXAS PAYDAY ACT
(Texas Labor Code § 61.001 et seq.)
(Against WCCTV)

80.    Plaintiff incorporates all preceding paragraphs.

81.    Commissions are "wages" under the Texas Payday Act.

82.    WCCTV violated the Act by:
    a. failing to pay earned commissions;
    b. altering commission structures after work was performed;
    c. withholding plan terms;
    d. imposing retroactive caps;
    e. failing to provide notice of pay reductions; and
    f. failing to pay wages in a timely manner.

83.    Plaintiff filed a wage complaint with the Texas Workforce Commission, constituting protected activity.

84.    WCCTV retaliated against Plaintiff by reducing her pay, withholding wages, and terminating benefits after the complaint.

85.    Plaintiff seeks all unpaid wages, penalties, and attorney's fees allowed by the Act.

COUNT 6 — RETALIATION UNDER FLSA § 215(a)(3)
(Against WCCTV and Adam Haworth)

86.    Plaintiff incorporates all preceding paragraphs.

87.    Plaintiff engaged in protected activity under the FLSA when she:
   a. complained about unpaid wages and commissions;
   b. opposed unlawful compensation practices;
   c. asserted her right to be paid earned commissions;
   d. filed a wage dispute; and
   e. filed suit for unpaid wages.

88.    Defendants WCCTV and Haworth retaliated by:
   a. terminating Plaintiff's insurance while she was on medical leave;
   b. returning her premium payment;
   c. issuing a false COBRA notice;
   d. reducing her earning potential through the FY2026 cap;
   e. withholding pay;
   f. misrepresenting compensation terms;
   g. refusing to provide documentation;
   h. pressuring Plaintiff to sign post-litigation documents; and
   i. ceasing communication after service of the lawsuit.

89.    These retaliatory actions were causally connected to Plaintiff's protected wage activity.

90.    Plaintiff suffered lost wages, emotional distress, and economic harm as a result.


COUNT 7 — RETALIATION UNDER TEXAS LABOR CODE
(Against WCCTV and Adam Haworth)

91.    Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

92.    Plaintiff engaged in protected activity under the Texas Labor Code when she:
   a. reported unpaid wages and unlawful commission practices;
   b. challenged WCCTV's failure to pay commissions owed as the procuring cause;
   c. filed a wage complaint with the Texas Workforce Commission;
   d. refused to sign the undisclosed and unlawful FY2026 compensation plan;
   e. opposed WCCTV's retroactive pay reductions;
   f. asserted her rights regarding earned commissions; and
   g. raised concerns about improper benefits termination.

93.    Each of these activities constitutes protected activity under applicable anti-retaliation provisions.

94.    Defendants WCCTV and Haworth retaliated against Plaintiff because of her protected activity. Retaliatory acts include, but are not limited to:

a. returning Plaintiff's insurance premium payment without explanation;

b. terminating Plaintiff's medical and insurance benefits while she was on physician-approved medical leave;

c. issuing an inaccurate COBRA notice falsely listing "reduction in hours" as the qualifying event;

d. unilaterally altering Plaintiff's pay after she raised wage concerns;

e. withholding the FY2025 compensation plan despite repeated requests;

f. reducing commissions by imposing unlawful caps on FY2024, FY2025, and FY2026 earnings;

g. attempting to coerce Plaintiff into signing the FY2026 plan post-litigation;

h. ceasing communication regarding wages, benefits, and commission structure;

i. creating and escalating a hostile environment after Plaintiff filed suit;

j. failing to provide payroll, benefits, and commission documentation accessible to other employees; and

k. missing the answer deadline, then removing the lawsuit to federal court to avoid accountability.

95.    Each retaliatory act occurred only after Plaintiff engaged in the protected activity, demonstrating close temporal proximity and causal connection.

96.    Defendants' actions were intentional, malicious, and carried out with reckless disregard for Plaintiff's rights.

97.    As a direct and proximate result of Defendants' retaliation, Plaintiff suffered:

a. lost wages;

b. lost commissions;

c. loss of insurance coverage;

d. medical and financial harm;

e. emotional distress; and

f. other compensable damages.

98.    Plaintiff seeks compensatory damages, punitive damages where applicable, emotional distress damages, reinstatement or front pay, lost wages, attorney's fees, costs, and all other relief permitted under Texas law.

COUNT 8 — FRAUD & CONSTRUCTIVE FRAUD
(Against WCCTV and Adam Haworth)

99.    Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

100. Defendants WCCTV and Haworth knowingly made false representations to Plaintiff concerning her compensation structure, commission eligibility, plan terms, payment timing, and benefits coverage.

101. These misrepresentations include, but are not limited to:
a. promising Plaintiff an annual OTE of $140,000 while concealing undisclosed commission caps;
b. representing that commissions would be paid monthly under defined written plans, which Defendants knowingly withheld;
c. failing to disclose the FY2024 plan until 82 days after performance began;
d. intentionally refusing to provide the FY2025 plan despite repeated requests;
e. falsely stating that Plaintiff's benefits were dependent on paperwork that no one asked Plaintiff to submit;
f. falsely claiming that Plaintiff experienced a "reduction in hours" to justify COBRA termination;
g. representing that Plaintiff's pay would not be reduced while secretly applying retroactive caps;
h. misrepresenting the timing, structure, and calculation method for commissions; and
i. coercively presenting the FY2026 plan only after litigation began.

102. WCCTV and Haworth knew these statements were false at the time they were made, as evidenced by:
a. their withholding of written plan documents;
b. internal changes to compensation without disclosure;
c. retroactive application of commission caps;
d. internal financial benefit gained by reducing Plaintiff's pay; and
e. benefits termination coinciding with Plaintiff's refusal to sign the FY2026 plan.

103. Defendants made these false statements and omissions with the intent that Plaintiff rely upon them by:
a. continuing to work under false compensation assumptions;
b. continuing to produce revenue and secure multi-year accounts;
c. refraining from challenging pay practices;
d. believing her insurance would remain in place; and
e. feeling pressured to sign a retroactive FY2026 plan.

104. Plaintiff did reasonably rely on Defendants' representations and omissions. Based on these representations, Plaintiff:
a. accepted employment;
b. generated substantial revenue;
c. remained employed despite pay inconsistencies;
d. trusted WCCTV to pay commissions when due; and
e. believed benefits were being maintained while on medical leave.

105.    As a direct and proximate result of Defendants' fraudulent acts, Plaintiff suffered:
   a. loss of earned commissions;
   b. diminished compensation;
   c. lost benefits;
   d. financial instability;
   e. emotional distress;
   f. medical expenses arising from lack of coverage; and
   g. opportunity loss related to her accounts.

106.    Alternatively, Defendants' conduct constitutes constructive fraud because they breached legal and equitable duties arising from the employer–employee relationship, including duties of honesty, disclosure, and fair dealing with respect to compensation and benefits.

107.    Defendants' actions resulted in an unfair advantage to WCCTV and Haworth, at Plaintiff's expense, satisfying the elements of constructive fraud.

108.    Plaintiff seeks actual damages, consequential damages, exemplary (punitive) damages, attorney's fees where recoverable, and all other relief allowed under Texas law.


COUNT 9 — NEGLIGENT MISREPRESENTATION
(Against WCCTV and Adam Haworth)

109.    Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

110.    Defendants WCCTV and Adam Haworth, in the course of their business and employment, supplied false information for Plaintiff's guidance regarding her compensation, commission structure, benefits coverage, and continued employment terms.

111.    Defendants represented to Plaintiff that:
   a. she would receive up to $70,000 annually in commissions and bonuses;
   b. commissions would be paid monthly under a written plan;
   c. compensation plans would be disclosed to her in full;
   d. WCCTV would not retroactively alter or cap her commissions;
   e. benefits would remain active so long as she complied with payment instructions;
   f. her insurance would not be terminated while on medical leave;
   g. WCCTV's compensation practices were uniform, transparent, and consistent; and
   h. her pay would be calculated according to established policies.

112.    Defendants made these representations in the course of their business operations and employment relationship with Plaintiff.

113.    Defendants failed to exercise reasonable care or competence in obtaining, communicating, or disclosing the information provided to Plaintiff, including:

a. failing to timely disclose the FY2024 plan;

b. withholding the FY2025 plan entirely;

c. representing incomplete or incorrect compensation structures;

d. issuing false benefits information;

e. failing to notify Plaintiff of retroactive pay reductions;

f. terminating benefits without proper qualification; and

g. presenting a misleading FY2026 plan during medical leave.

114. Plaintiff justifiably relied on Defendants' statements and omissions in accepting the job, performing services, generating revenue, and attempting to understand her wages and benefits.

115. Defendants knew or should have known that Plaintiff would rely on their representations when making decisions regarding her employment, compensation expectations, medical coverage, and financial obligations.

116. As a direct and proximate result of Defendants' negligent misrepresentations, Plaintiff suffered:

a. loss of earned wages and commissions;

b. loss of benefits;

c. medical expenses incurred due to insurance termination;

d. financial hardship; and

e. emotional distress.

117. Plaintiff seeks all damages allowed under Texas law, including actual damages, economic losses, reliance damages, and all other relief necessary to compensate her for Defendants' negligent misrepresentations.


COUNT 10 — INTERFERENCE WITH PROTECTED RIGHTS
UNDER ERISA § 510 (29 U.S.C. § 1140)
(Against WCCTV and Adam Haworth)

118. Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

119. At all relevant times, Plaintiff was a participant in WCCTV's employee welfare benefit plans, including its group health insurance plan, within the meaning of ERISA, 29 U.S.C. § 1002.

120. ERISA § 510 prohibits an employer from discharging, fining, suspending, expelling, disciplining, or discriminating against a participant for exercising rights under an ERISA plan or for the purpose of interfering with the attainment of any right to which the participant may become entitled.

121.    Defendants WCCTV and Haworth took adverse and discriminatory actions against Plaintiff for the purpose of interfering with her health insurance coverage and her ability to obtain and retain medical benefits.

122.    While Plaintiff was on active, physician-approved medical leave, Defendants unlawfully terminated her group health insurance coverage without cause or proper notice.

123.    Defendants returned Plaintiff's premium payment without explanation despite previously instructing Plaintiff to submit payment by a specific date.

124.    Defendants misrepresented the status of her benefits and falsely stated that Plaintiff's coverage ended due to "reduction in hours," despite knowing that Plaintiff:
    a. remained an active employee;
    b. was on certified medical leave;
    c. had not voluntarily reduced her hours; and
    d. had complied with every requirement to maintain coverage.

125.    Defendants interfered with Plaintiff's ERISA rights by:
    a. terminating her coverage immediately after Plaintiff refused to sign the FY2026 compensation plan;
    b. manipulating records to create a false justification for termination;
    c. failing to provide a timely or accurate Notice of Rights under COBRA;
    d. refusing to provide benefits-related documentation necessary for Plaintiff to understand her coverage; and
    e. attempting to force Plaintiff into accepting unfavorable employment terms by threatening her medical benefits.

126.    These actions were taken knowingly, willfully, and with retaliatory intent following Plaintiff's protected wage complaints and the filing of her lawsuit.

127.    As a direct and proximate result of Defendants' violations of ERISA § 510, Plaintiff suffered:
    a. loss of medical insurance coverage;
    b. medical expenses incurred due to lack of coverage;
    c. physical and emotional harm;
    d. financial hardship; and
    e. degradation of her ability to seek medical treatment.

128.    Plaintiff seeks appropriate equitable relief under 29 U.S.C. § 1132(a)(3), including:
    a. reinstatement of benefits;
    b. surcharge;
    c. restitution;
    d. disgorgement;
    e. attorney's fees and costs; and

f. any other relief deemed just and proper.

COUNT 11 — COBRA NOTICE VIOLATIONS
(29 U.S.C. § 1166 et seq.)
(Against WCCTV)

129.    Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

130.    Under COBRA, a covered employer must provide employees with:
    a. timely notice of a qualifying event;
    b. accurate notice of the right to elect continuation coverage;
    c. correct COBRA election documents;
    d. notice that complies with 29 U.S.C. § 1166(a) and (c); and
    e. continuation of health insurance for the required election period upon premium payment.

131.    COBRA is triggered only by legitimate qualifying events, such as termination of employment or a reduction in hours resulting in loss of coverage.

132.    Plaintiff did not voluntarily reduce her hours, did not resign, and did not abandon her job. Plaintiff remained on active medical leave with ongoing physician documentation.

133.    Nevertheless, Defendants issued Plaintiff a COBRA notice falsely claiming "reduction in hours" as the qualifying event.

134.    This statement was false, misleading, and knowingly incorrect.

135.    WCCTV used the false qualifying event to justify terminating Plaintiff's health benefits while she remained on active approved medical leave, in direct violation of COBRA and ERISA.

136.    WCCTV failed to provide:
    a. timely notice of the qualifying event;
    b. accurate explanation of her rights;
    c. correct COBRA documentation;
    d. required disclosures under 29 U.S.C. § 1166; and
    e. proper notice of the cost, duration, and availability of continuation coverage.

137.    WCCTV further violated COBRA by returning Plaintiff's premium payment without explanation, which:
    a. prevented Plaintiff from maintaining coverage;
    b. created a false record that Plaintiff failed to pay; and
    c. deprived Plaintiff of the insurance she needed while on leave.

138.    As a direct result of WCCTV's COBRA violations, Plaintiff:

a. lost access to medical care;

b. incurred medical expenses out-of-pocket;

c. suffered physical and emotional distress; and

d. was placed under severe financial strain.

139.     Under 29 U.S.C. § 1132(c)(1), employers may be penalized up to $110 per day for each day they fail to provide required COBRA notices.

140.     Plaintiff seeks statutory penalties, reimbursement for medical expenses, reinstatement of benefits (if available), attorney's fees, costs, and all equitable relief necessary to remedy Defendants' unlawful conduct.

COUNT 12 — INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (IIED)
(Against WCCTV and Adam Haworth)

141.     Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

142.     Defendants WCCTV and Haworth engaged in extreme and outrageous conduct that went beyond the bounds tolerated in a civilized society and was intended to cause—or was committed with reckless disregard for the likelihood of causing—Plaintiff severe emotional distress.

143.     Defendants' conduct includes, but is not limited to:

a. terminating Plaintiff's health insurance coverage while she was on active, physician-approved medical leave;

b. returning Plaintiff's premium payment without explanation, knowing it would cause immediate loss of medical coverage;

c. issuing a knowingly false COBRA notice with a fabricated qualifying event;

d. coercing Plaintiff to sign a retroactive FY2026 compensation plan while she was on medical leave and immediately after being served with this lawsuit;

e. intentionally withholding the FY2025 compensation plan for over a year;

f. retroactively reducing Plaintiff's income and imposing unlawful caps on her commissions;

g. cutting off communication regarding wages, benefits, and employment status;

h. retaliating against Plaintiff for asserting her legal rights and reporting wage violations;

i. manipulating Plaintiff's access to medical care during a period of documented vulnerability; and

j. taking adverse actions within hours of Plaintiff refusing to sign an undisclosed compensation plan.

144.     Defendants' conduct was deliberate, punitive, and carried out in conscious disregard of Plaintiff's health, financial stability, and legal rights.

145.   Defendants intended to cause Plaintiff emotional harm, or acted with reckless disregard for the near-certainty that their actions would inflict emotional distress.

146.   As a direct result of Defendants' conduct, Plaintiff suffered severe emotional distress, including:
a. anxiety and panic episodes;
b. mental anguish;
c. humiliation;
d. loss of sleep;
e. emotional trauma caused by loss of healthcare;
f. fear regarding her medical condition and financial security; and
g. worsening mental health symptoms.

147.   Defendants' actions exacerbated Plaintiff's medical condition and substantially interfered with her ability to access treatment.

COUNT 13 — ERISA BREACH OF FIDUCIARY DUTY
(29 U.S.C. § 1104; § 1132(a)(3))
(Against WCCTV and Adam Haworth)

148.   Plaintiff re-alleges and incorporates all preceding paragraphs as though fully set forth herein.

149.   Defendants WCCTV and Haworth exercised discretionary authority and control over the administration, management, and interpretation of Plaintiff's employee benefit plan, including health insurance coverage and premium handling.

150.   As fiduciaries of an ERISA-governed plan, Defendants owed Plaintiff duties of loyalty, prudence, honesty, fair dealing, accurate disclosure, and acting solely in Plaintiff's best interest.

151.   Defendants breached these fiduciary duties by:
a. misrepresenting Plaintiff's benefits status;
b. returning her premium payment without explanation;
c. failing to apply her timely premium;
d. terminating coverage while Plaintiff remained on approved medical leave;
e. issuing a COBRA notice falsely claiming "reduction in hours";
f. failing to maintain accurate records;
g. withholding critical information about her coverage; and
h. using benefits termination as retaliation for protected activity.

152.   Defendants' actions were intentional, reckless, and taken with knowledge that Plaintiff was in active medical treatment and relied on her health insurance for essential care.

153.    Defendants used their fiduciary powers not for the benefit of Plaintiff, but for WCCTV's own financial and litigation advantage, in violation of ERISA § 1104(a)(1)(A)–(B).

154.    As a direct and proximate result of Defendants' breaches, Plaintiff suffered financial harm, medical disruption, emotional distress, and incurred out-of-pocket expenses for medical care.

155.    Plaintiff seeks equitable relief under ERISA § 502(a)(3), including but not limited to:
   a. reinstatement of benefits;
   b. surcharge;
   c. disgorgement;
   d. clarification of rights;
   e. correction of records; and
   f. any other relief the Court deems appropriate.


COUNT 14 — DECLARATORY JUDGMENT
(28 U.S.C. §§ 2201–2202)
(Against WCCTV)

156.    Plaintiff re-alleges and incorporates all preceding paragraphs.

157.    A real and substantial controversy exists between Plaintiff and WCCTV regarding the legality, enforceability, and retroactive application of the FY2025 and FY2026 compensation plans.

158.    WCCTV:
   a. refused to provide the FY2025 plan despite more than a year of written requests;
   b. retroactively applied undisclosed caps to Plaintiff's earned commissions;
   c. attempted to force Plaintiff to sign an FY2026 plan while she was on medical leave;
   d. reduced Plaintiff's earnings without her agreement;
   e. altered commission terms after performance; and
   f. used compensation plans as leverage after litigation began.

159.    Plaintiff has a legally protectable interest in obtaining a judicial determination regarding her rights under the compensation structure, including:
   a. whether the FY2025 plan is valid or enforceable;
   b. whether WCCTV may retroactively impose commission caps;
   c. whether forcing Plaintiff to sign FY2026 during medical leave is valid;
   d. whether Plaintiff's original offer-letter compensation controls; and
   e. whether WCCTV's unilateral modifications are lawful.

160.    A declaratory judgment will resolve these controversies and clarify the rights and obligations of both parties.

161. Without such a declaration, Plaintiff will continue to suffer uncertainty, lost wages, and ongoing financial harm.

162. Plaintiff respectfully requests a declaratory judgment that:
a. the FY2025 plan is unenforceable due to concealment, nondisclosure, and bad-faith withholding;
b. the FY2026 plan is invalid due to coercion, retaliation, and presentation during protected medical leave;
c. retroactive caps on commissions are void and unlawful;
d. Plaintiff's offer-letter compensation terms control; and
e. any further relief under 28 U.S.C. § 2202 that the Court deems appropriate.


## X. DAMAGES

163. Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

164. As a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered extensive damages, including but not limited to the following:

A. Lost Wages and Unpaid Commissions

165. Plaintiff is entitled to all unpaid wages and commissions wrongfully withheld by Defendants, including but not limited to:
a. unpaid FY2024 commissions;
b. unpaid FY2025 commissions;
c. unpaid revenue for which Plaintiff was the procuring cause;
d. unpaid arrears;
e. any commissions suppressed through undisclosed caps; and
f. commissions reduced or eliminated by retroactive changes.

166. Plaintiff seeks full compensation for all wages due under Texas Labor Code § 61, the FLSA's protections against retaliation affecting pay, and applicable common law.

B. Back Pay

167. Plaintiff seeks back pay for all lost income resulting from Defendants' retaliatory actions, reductions in pay, benefits termination, wage suppression, and constructive termination.

C. Front Pay / Lost Future Earnings

168. Plaintiff seeks front pay and lost future earnings due to the damage Defendants caused to her professional standing, employability, earning capacity, and sales pipeline.

D. Loss of Benefits and Medical Expenses

169.    Defendants' unlawful termination of Plaintiff's insurance during medical leave caused:
   a. loss of medical coverage;
   b. out-of-pocket medical expenses;
   c. disruption in treatment;
   d. financial hardship; and
   e. increased medical risk.

170.    Plaintiff seeks recovery of all medical costs incurred due to loss of coverage and all consequential damages flowing from Defendants' COBRA and ERISA violations.

E. Emotional Distress / Mental Anguish

171.    Defendants' actions caused Plaintiff severe emotional distress, including:
   a. anxiety;
   b. fear;
   c. humiliation;
   d. panic episodes;
   e. loss of sleep;
   f. mental anguish; and
   g. psychological trauma.

172.    Damages for emotional distress are recoverable under retaliation statutes, IIED, the Texas Labor Code, and federal anti-retaliation law.

F. Statutory Penalties (COBRA and ERISA)

173.    Plaintiff seeks all statutory penalties permitted by federal law, including:
   a. penalties under 29 U.S.C. § 1132(c)(1) for COBRA notice violations; and
   b. equitable relief under ERISA § 510 and § 502(a)(3), including restitution, surcharge, and reinstatement of benefits.

G. Punitive/Exemplary Damages

174.    Plaintiff seeks punitive damages against Defendants because their conduct was:
   a. intentional;
   b. malicious;
   c. retaliatory;
   d. fraudulent; and
   e. carried out with reckless disregard for Plaintiff's rights.

175.    Punitive damages are warranted to punish Defendants and deter similar misconduct by WCCTV and its leadership.

H. Attorney's Fees and Costs

176.    Plaintiff seeks reasonable attorney's fees, expert fees, and litigation costs under the Texas Labor Code, FLSA retaliation provisions, ERISA, COBRA penalty statutes, and federal common law, to the extent such fees become recoverable if Plaintiff later retains counsel.

I. Pre-Judgment and Post-Judgment Interest

177.    Plaintiff seeks all applicable interest to fully compensate her for the time value of money wrongfully withheld.

XI. PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiff, BRIDGETT M. MOORE, respectfully requests that, upon final hearing or trial, this Court enter judgment in her favor and against Defendants Wireless CCTV LLC and Adam Haworth, jointly and severally, and award the following relief:

A. Compensatory Monetary Relief

178.    All unpaid wages and commissions wrongfully withheld;

179.    All arrears and procuring-cause commissions owed;

180.    Back pay for lost earnings resulting from retaliation and wage manipulation;

181.    Front pay or reinstatement, whichever is deemed appropriate;

182.    Compensation for loss of benefits and all out-of-pocket medical expenses;

183.    Compensation for emotional distress and mental anguish.

B. Statutory Damages and Penalties

184.    Penalties under the Texas Payday Act;

185.    Liquidated damages where applicable under federal law;

186.    COBRA statutory penalties up to $110 per day for Defendants' notice violations;

187.    All equitable and statutory remedies allowed under ERISA § 502 and § 510, including surcharge, restitution, and reinstatement of benefits.

C. Punitive/Exemplary Damages

188.    Punitive damages arising from Defendants' intentional, malicious, fraudulent, and retaliatory conduct.

D. Declaratory and Injunctive Relief

189.    A declaration that Defendants' conduct violated state and federal law;

190.    An injunction prohibiting Defendants from further retaliation or interference with Plaintiff's rights;

191.    An order requiring correction of all wage, benefit, and employment records.

E. Fees, Costs, and Interest

192.    Reasonable attorney's fees and expert fees as allowed by statute;

193.    Court costs and litigation expenses;

194.    Pre-judgment and post-judgment interest at the maximum lawful rate.

F. All Other Relief

195.    Any and all further relief, at law or in equity, to which Plaintiff may be justly entitled.


XII. JURY DEMAND

196.    Plaintiff demands a trial by jury on all issues so triable as a matter of right under the United States Constitution, federal law, and applicable state law.

Respectfully submitted,

/s/ Bridgett M. Moore
Bridgett M. Moore
Pro Se Plaintiff
P.O. Box 450242
Houston, TX 77245
Phone: 832-231-0099
Email: Bmluguja80@gmail.com

## CERTIFICATE OF SERVICE

I certify that on December 3, 2025, a true and correct copy of the foregoing Amended Complaint was served on counsel for Defendants via the Court's CM/ECF system addressed as follows:

D. Lewis Clark, Jr.
Squire Patton Boggs (US) LLP
600 Travis Street, Suite 6700
Houston, TX 77002

Bridgett M. Moore