United States District Court
Southern District of Texas

**ENTERED**

April 27, 2026

Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| BRIDGETT MOORE, | § § § § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. H-25-5476 |
| | § | |
| WIRELESS CCTV LLC, *et al.*, | § § | |
| Defendants. | § § § § | |

**MEMORANDUM OPINION AND ORDER**

This is a dispute over compensation and health benefits.  Bridgett Moore sued Wireless CCTV LLC, asserting more than a dozen causes of action under state and federal law and seeking damages as well as declaratory and injunctive relief.  (Docket Entry No. 6).  Wireless moved to dismiss.  (Docket Entry No. 10).  Based on the motion, the briefs, the pleadings, and the applicable law, the court grants the motion to dismiss, without prejudice and with one last opportunity for Moore to amend her complaint.  Moore must file an amended complaint no later than May 15, 2026.[1]  The reasons for this ruling are below.

I.   **Background**

In early October 2025, Moore filed this lawsuit in state court.  (Docket Entry No. 6 ¶ 27).  Moore worked as a Wireless Regional Account Manager for the Houston region.  (*Id.* ¶ 1).  Moore

---

[1] The court already granted Moore leave to amend her complaint by March 6, 2026.  She did not, despite her counsel indicating at the initial conference that she planned to amend.  (Docket Entry Nos. 22, 23).  Failure to amend by May 15 will result in dismissal, with prejudice.  Although Wireless argues that Moore has filed two amended pleadings already and should not be allowed another chance, (Docket Entry No. 10 at 10), the court notes that this is the first ruling on a motion to dismiss.  Moore may have one more opportunity to amend to address the deficiencies in her complaint.

asserted claims against Wireless for breach of contract, violation of Chapter 61 of the Texas Labor Code, unjust enrichment, and constructive fraud.  (Docket Entry No. 1-2 at 5–6).  Moore amended her complaint for the first time in late October 2025 to add a claim under the Fair Labor Standards Act.  (*Id.* at 21).  Moore alleged that a few weeks after filing suit, she also filed a formal written wage complaint asserting that she was the procuring cause of accounts for which Wireless was unlawfully withholding her commissions.  (Docket Entry No. 6 ¶ 22).  Wireless timely removed.

In December 2025, Moore filed her second amended complaint.[2]  (Docket Entry No. 6). She alleged that she accepted the Wireless position based on "explicit representations" that her compensation would be a $70,000 base salary plus up to $70,000 in commissions and bonuses. (*Id.* ¶ 10).  Moore alleges that she was told (it is unclear by whom at Wireless) that she would be paid monthly and that a "detailed compensation plan" would follow.  (*Id.* ¶ 11).  Wireless did not provide her with the FY2024 compensation plan until January 14, 2024.  (*Id.* ¶ 13).  Moore alleges that Wireless then tried to apply this plan retroactively to her start date.  (*Id.* ¶ 14).  Moore asserts that Wireless's "delay" prevented her "from understanding or negotiating essential terms of her compensation" and allowed Wireless "to manipulate the calculation and timing of commission payments."  (*Id.* ¶ 16).  Moore alleges that throughout 2024 and 2025, she repeatedly asked Wireless for a FY2025 written compensation plan, which Wireless refused to provide.  (*Id.* ¶ 17). Moore states that she raised concerns about her unpaid commissions, inaccurate commission calculations, and improper caps multiple times in 2024.  (*Id.* ¶ 21).

---

[2] Although the complaint filed on December 3, 2025, is entitled the "Amended Complaint," Moore had already filed an amended complaint in state court, adding the federal cause of action that allowed Wireless to remove.  (Docket Entry No. 1-2).  The operative complaint is the second amended complaint and the court will refer to this filing as such.

In late 2025, Moore went on physician-approved medical leave.  (*Id.* ¶ 24).  Wireless did not request a return-to-work release date from Moore's physician.  (*Id.* ¶ 25).  Moore alleges that Wireless interfered with her insurance coverage, returned her premium payment with no explanation, and issued a COBRA notice "falsely" stating a reduction in hours as the qualifying event.  (*Id.* ¶ 25).  Moore alleges that these actions occurred after she refused to sign the FY2026 compensation plan, which she had not been provided, while on medical leave.  (*Id.* ¶ 30).

The second amended complaint asserts 14 causes of action against Wireless.[3]  These causes of action are: (1) breach of contract, (2) breach of implied-in-fact contract/promissory estoppel; (3) quantum meruit or unjust enrichment; (4) the procuring-cause doctrine; (5) violation of Chapter 61 of the Texas Labor Code; (6) retaliation under the FLSA; (7) retaliation under the Texas Labor Code; (8) fraud and constructive fraud; (9) negligent misrepresentation; (10) interference with protected rights under ERISA § 510; (11) COBRA notice violations; (12) intentional infliction of emotional distress; (13) ERISA breach of fiduciary duty; and (14) declaratory judgment.

Wireless moved to dismiss the second amended complaint.  (Docket Entry No. 10).  Moore, who had been proceeding pro se, obtained counsel just before the initial conference.  (Docket Entry No. 20).  At the conference, the court granted Moore leave to amend her pleadings by March 6, 2026.  (Docket Entry Nos. 22, 23).  She did not do so.

## II.    The Legal Standard

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted."  FED. R. CIV. P. 12(b)(6).  Rule 12(b)(6) must be read in conjunction with Rule 8(a),

---

[3] The second amended complaint added Adam Haworth, Wireless's President of U.S. Operations, as a defendant; he was not named as a defendant until after the case was removed to federal court.  The record shows no return of service on Haworth, and he has not participated in this suit.  The Rule 4(m) time for service has expired.

which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

"A complaint 'does not need detailed factual allegations,' but the facts alleged 'must be enough to raise a right to relief above the speculative level.'" *Cicalese v. Univ. Tex. Med. Branch*, 924 F.3d 762, 765 (5th Cir. 2019) (quoting *Twombly*, 550 U.S. at 555). "Conversely, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quotation marks omitted, alterations adopted) (quoting *Twombly*, 550 U.S. at 558).

A court reviewing a motion to dismiss under Rule 12(b)(6) may consider "(1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201." *Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 900 (5th Cir. 2019).

III. **Analysis**

A. **The Federal-Law Claims**

4

### 1. Retaliation under the FLSA

Moore alleges that Wireless violated the FLSA when it retaliated against her after she engaged in protected activity under the FLSA by complaining about unpaid wages; opposing unlawful compensation practices; asserting her right to be paid earned commissions; filing a wage dispute; and filing this suit. (*Id.* ¶¶ 86-88). Wireless responds that the FLSA claim must be dismissed because, among other issues, Moore's complaints failed to allege her involvement in FLSA-protected activity. (Docket Entry No. 10 at 7; Docket Entry No. 15 at 2).

An FLSA retaliation claim requires a plaintiff to "make a *prima facie* showing of (1) participation in protected activity under the FLSA; (2) an adverse employment action; and (3) a causal link between the activity and the adverse action. If a plaintiff meets this burden, the defendant must then articulate a legitimate, non-discriminatory reason for its decisions. The burden then shifts to the plaintiff to demonstrate that the proffered reason is a pretext for discrimination." *Hagan v. Echostar Satellite, L.L.C.*, 529 F.3d 617, 624 (5th Cir. 2008) (quoting *Hagan v. Echostar Satellite L.L.C.*, Civ. Action No. H-05-1365, 2007 WL 543441, at *4 (S.D. Tex. Feb. 16, 2007)). The "ultimate question [is] whether a defendant took the adverse employment action against a plaintiff because of . . . protected status." *Id.* (quoting *Kanida v. Gulf Coast Med. Personnel LP*, 363 F.3d 568, 576 (5th Cir. 2004)). An internal, informal complaint can constitute a protected activity under the FLSA. *Id.* at 626.

"To demonstrate that she participated in an FLSA protected activity, [a plaintiff] must first demonstrate that she filed a complaint. In order for an employee's communication to constitute a 'complaint,' the 'employer must have fair notice that an employee is making a complaint that could subject the employer to a later claim of retaliation' and the 'complaint must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an

5

assertion of rights protected by the [FLSA] and a call for their protection.'" *Lasater v. Tex. A&M Univ.-Commerce*, 495 F. App'x 458, 462 (5th Cir. 2012) (quoting *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 13, 14 (2011)).

The FLSA does not protect all complaints generally related to compensation. Rather, "[a]s long as the complaints do not indicate to a reasonable employer that they implicate minimum wage or overtime requirements of the FLSA, they are not protected activity for the purposes of FLSA retaliation." *Lockhart v. Republic Services, Inc.*, No. CV SA-18-CA-766-XR, 2020 WL 2308438, at *32 (W.D. Tex. May 8, 2020), *aff'd*, No. 20-50474, 2021 WL 4955241 (5th Cir. Oct. 25, 2021); *accord Keels v. Cont'l Tire Sumter, LLC*, No. 3:20-cv-CMC-SVH, 2022 WL 1498275, at *7 (D.S.C. May 12, 2022) (dismissing an FLSA retaliation claim because "the Amended Complaint is devoid of a single allegation Continental paid [the plaintiff] less than minimum wage or withheld wages [the plaintiff] earned by working more than forty hours in a single workweek"); *Bouchard v. Summit Ridge Energy, LLC*, No. 1:23-cv1573, 2024 WL 1468337, at *2 (E.D. Va. Apr. 3, 2024) ("Complaints about compensation owed as a matter of contract or common law differ from complaints about compensation owed as a matter of federal statute. The latter falls within the FLSA's scope; on its own, the former does not."); *McMillin v. Cpride Grp. LLC*, No. 2:21-cv-549-BJR, 2022 WL 1203741, at *5 (W.D. Wash. Apr. 22, 2022) (dismissing an FLSA retaliation claim when the plaintiff's claim was based on complaints she had made about unpaid bonuses); *Stephens v. One Nevada Credit Union*, No. 2:13-cv-01712, 2016 WL 3360661, at *4 (D. Nev. June 8, 2016) (the plaintiff could not state a retaliation claim under the FLSA because his complaints were based on a failure to pay commissions, not minimum wage or overtime pay).

Moore does not allege that she made a complaint (informal or otherwise) about rights protected by the FLSA. The compensation practices she complained about are the breach of an

alleged promise to pay certain commission and bonus amounts.  She did not complain about a failure to pay a federally required minimum wage or overtime amount.  Retaliation for complaining about practices outside those protected by the FLSA cannot form the basis of an FLSA retaliation suit.  Moore's FLSA retaliation claim is dismissed, without prejudice.  Moore may amend her complaint to attempt to address the deficiencies in her FLSA claim, consistent with Rule 11.

### 2.   The COBRA Claims

Moore alleges that Wireless failed to comply with COBRA notice requirements, in violation of 29 U.S.C. § 1166 *et seq.*  (Docket Entry No. 6 ¶¶ 129–40).  "Under COBRA, an employer must provide notice to its plan administrator within thirty days of a qualifying event, and the administrator must provide notice to the employee of his rights within fourteen days of receiving notice."  *Sterling v. City of New Roads*, Civ. Action No. 08-424-JJB, 2010 WL 55333, at *3 (M.D. La. Jan. 6, 2010) (citing 29 U.S.C. § 1166(a)(2), (c)).  A "reduction in hours" is a qualifying event.  *See* 29 U.S.C. § 1163(2).  Moore argues that she "did not voluntarily reduce her hours, did not resign, and did not abandon her job," but rather remained on active medical leave. (*Id.* ¶ 132).  As a result, according to Moore, COBRA was not triggered and Wireless's COBRA notice stating a "reduction in hours" as the qualifying event was "false[]." (*Id.* ¶¶ 131, 133).  Moore also alleges that Wireless violated COBRA by returning her premium payment.  (*Id.* ¶ 137). Wireless responds that Moore's claim must be dismissed because the facts alleged show that Wireless *complied* with its COBRA obligations.  (Docket Entry No. 10 at 10–11).

The court agrees that the facts alleged show that Wireless complied with its COBRA obligations.  A reduction in hours is a "qualifying event" under COBRA.  *See* 29 U.S.C. § 1163(2). What Moore fails to acknowledge is that a change from full-time employment to unpaid, non-FMLA medical leave counts as a "reduction in hours" under the statute.  *See Mehmen v. Collin*

*County*, 558 F. Supp. 2d 711, 717 (E.D. Tex. 2007) (reviewing the language and history of the COBRA statute and concluding that the plaintiff's "inability to return to work upon the expiration of his FMLA leave was a 'reduction of hours' under the statute"); *see also Solomon v. Fordham Univ.*, 2021 WL 2292916, at *3 (S.D.N.Y. June 4, 2021) (citing 26 C.F.R. § 54.4980B-4(e) and stating that the plain text of that regulation "encompasses unpaid leave"). That Moore's leave was "approved" does not mean that it was not a qualifying event; it was still unpaid, non-FMLA leave. (Docket Entry No. 12 at 4). Notably, Moore does not argue that Wireless failed to provide timely notice or otherwise failed to meet COBRA's notice requirements; she argues only that the notice itself was improper because her leave should not have been considered a qualifying event.

The claim for violation of COBRA notice requirements is dismissed, without prejudice. Moore may have one more opportunity to plead facts demonstrating that Wireless failed to comply with its COBRA requirements.

### 3. The ERISA Claims

Moore asserts claims under ERISA for interference with protected rights, in violation of ERISA § 510, 29 U.S.C. § 1140, and breach of fiduciary duty, in violation of 29 U.S.C. § 1104, 1132(a)(3). (Docket Entry No. 6 ¶¶ 118–28, 148–55). These claims are largely premised on the same facts as her COBRA claim—that Wireless allegedly interfered with her protected rights because it terminated her health benefits while she was on medical leave and without proper notice, and that it violated its fiduciary duty by failing to act in her best interests. Wireless responds that: (1) the § 510 claim must be dismissed because Moore's pleadings "demonstrate that her loss of benefits was the mere consequence of the expiration of coverage due to a reduction of hours during unpaid, non-FMLA leave"; and (2) the ERISA fiduciary duty claim fails because Moore alleged "no facts" showing that Wireless had discretionary authority over the plans its provides to its

employees, that it was not acting solely in an employer capacity in the conduct alleged, or how it could have breached a duty when it met its COBRA notice obligations and returned a premium payment from an expired plan.  (Docket Entry No. 10 at 11).

"To make a *prima facie* showing of interference under § 510, an employee must show '(1) prohibited (adverse) employer action, (2) taken for the purpose of interfering with the attainment of (3) any right to which the employee is entitled' or may become entitled." *Jurach v. Safety Vision, LLC*, 72 F. Supp. 3d 698, 715 (S.D. Tex. 2014) (quoting *Bodine v. Emps. Cas. Co.*, 352 F.3d 245, 250 & n.3 (5th Cir. 2003)).  "An essential element of a Section 510 claim is proof of defendant's specific discriminatory intent." *Id.* (quoting *Hines v. Mass. Mut. Life Ins. Co.*, 43 F.3d 207, 209 (5th Cir. 1995)).  "The 'incidental loss of benefits due to discharge' is insufficient to show intent." *Id.* (quoting *Holtzclaw v. DSC Commc'ns Corp.*, 255 F.3d 254, 260 (5th Cir. 2001)).

A claim for breach of fiduciary duty under ERISA requires a plaintiff to "establish three elements: (1) the plan is governed by ERISA, (2) the defendant is a fiduciary of the plan, and (3) the defendant breached its fiduciary duties under ERISA, resulting in losses to the plan's participants." *Spence v. Am. Airlines, Inc.*, 775 F. Supp. 3d 963, 994 (N.D. Tex. 2025).  "The Fifth Circuit has identified three general ways to assume fiduciary status under ERISA: (1) serving 'as a named fiduciary in the instrument establishing the employee benefit plan,' (2) 'becoming a named fiduciary pursuant to a procedure specified in the plan instrument,' and (3) acting 'as a "functional fiduciary" under the broad authority, control, or advise provisions of ERISA.'" *Id.* at 996 (quoting *Perez v. Bruister*, 823 F.3d 250, 259 (5th Cir. 2016)).

The facts Moore pleaded are that she lost her benefits (and received notice under COBRA) because of a reduction in hours during unpaid, non-FMLA leave.  Wireless argues that these facts show that Moore's loss of benefits "was not the consequence of an employer action—let alone a

prohibited employer action taken for the purposes of interfering with the attainment of an employee right." (Docket Entry No. 10 at 11). The court agrees. Moore has pleaded no facts plausibly showing interference under § 510; the alleged facts merely show that Moore lost benefits during non-FMLA medical leave. The loss of benefits is, alone, insufficient to state a claim under § 510 anyway. *Jurach*, 72 F. Supp. 3d at 715. For similar reasons, Moore has not plausibly pleaded an ERISA breach of fiduciary duty claim. Even setting aside Wireless's argument that Moore failed to plead that Wireless was a fiduciary, the facts do not show that Wireless breached any fiduciary duty. Rather, the alleged facts show that Wireless properly sent Moore a notice under COBRA and properly returned a payment for an expired plan.

The ERISA claims are dismissed, without prejudice. Moore may have one final opportunity to amend to allege violations of ERISA.

### 4. Declaratory Judgment

Moore's final "count" based on federal law is for a declaratory judgment under 28 U.S.C. §§ 2201–2202. (Docket Entry No. 6 ¶¶ 156–162). A declaratory judgment "is not an independent cause of action, but merely a remedy." *Johnson v. Bloom Retirement Holdings, Inc.*, No. 4:23-cv-2086, 2024 WL 4932724, at *2 (S.D. Tex. Nov. 26, 2024); *see also Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240 (1937). Moore cannot assert a "count" for declaratory judgment, and for the reasons explained both above (for federal-law claims) and below (for state-law claims), Moore has not plausibly pleaded any substantive claims at this time for which she could obtain this remedy.

### B. The State-Law Claims

Moore also asserts a panoply of state-law claims against Wireless. In response, Wireless argues that because Moore filed a wage complaint with the Texas Workforce Commission (TWC) but did not exhaust her administrative remedies, her state-law claims must be dismissed. (Docket

Entry No. 10 at 12). Wireless argues that "once a claimant elects to file an administrative claim, they forego their common law claims." (Docket Entry No. 10 at 12) (citing *Abatement Inc. v. Williams*, 324 S.W.3d 858, 864 (Tex. App.—Houston [14th Dist. 2010], pet. denied) and *Hull v. Davis*, 211 S.W.3d. 461, 465 (Tex. App.—Houston [14th Dist.] 2006, no pet.)). Wireless also argues that, in any event, Moore fails to sufficiently plead her state-law claims. (*Id.* at 13). In response, Moore argues—in a single short paragraph with no citations—that "[w]hether an administrative filing constitutes an election barring all judicial remedies is a mixed question of law and fact inappropriate for dismissal at the pleading stage." (Docket Entry No. 12 at 6).

The court dismisses Moore's breach of contract/implied contract,[4] quantum meruit,[5] and "Chapter 61"[6] claims because she cannot pursue both an active TWC action and common law claims based on breach of contract. As the Texas Court of Appeals held in *Hull*, when plaintiffs

---

[4] Moore also brings a "count" for violation of the procuring cause doctrine. (Docket Entry No. 6 ¶¶ 73–79). As Wireless argues, (Docket Entry No. 10 at 15), that is not a separate cause of action, but merely a doctrine within a claim for breach of contract. *See Perthuis v. Baylor Miraca Genetics Labs., LLC*, 645 S.W.3d 228, 233–34 (Tex. 2022) (explaining the procuring cause doctrine in the context of a breach of contract claim based on alleged unpaid commissions); *see also Petro Marine Underwriters, Inc. v. Cox Oper. Co., L.L.C.*, No. 21-20100, 2022 WL 1793026, at *2–3 (5th Cir. June 2, 2022) (per curiam).

[5] While Moore "cannot recover for both breach of contract and quasi-contract theories, 'Texas law clearly permits a party to plead both a claim for breach of contract and, in the alternative, equitable claims.'" *Int'l Pecans, LLC v. Ultra Trading Int'l Corp.*, 764 F. Supp. 3d 527, 537 (W.D. Tex. 2025) (quoting *SCIVIC Eng'g Am., Inc. v. Spark Power Corp.*, No. 5:21-cv-572-XR, 2022 WL 36011, at *4 (W.D. Tex. Jan. 4, 2022)).

[6] Moore brings a claim for violation of Chapter 61, (Docket Entry No. 6 ¶¶ 80–85), but Chapter 61 does not provide a private cause of action. To the extent that Moore is trying to assert a stand-alone claim under Chapter 61 (rather than a challenge to a final administrative decision), such a claim is dismissed, with prejudice. *See, e.g.*, *Abatement Inc.*, 324 S.W. 3d at 864 ("Chapter 61 provides a detailed administrative enforcement scheme and allows the possibility for enforcement by the attorney general, and nothing in language of chapter 61 shows any intent to also allow a private right of action."); *Brown v. Joseph Cory Holdings, LLC*, No. 4:13-CV-044-Y, 2014 WL 12585674, at *2 (N.D. Tex. July 30, 2014) ("Because the Texas Payday Act does not provide for a private right of action, and because Brown did not pursue available administrative remedies, Cory is entitled to summary judgment with respect to Brown's claims under Chapter 61"); *Vargas v. Salazar*, No. 4:23-CV-4267, 2024 WL 4804091, at *2 (S.D. Tex. Nov. 1, 2024), *report and recommendation adopted*, 2024 WL 4804065 (S.D. Tex. Nov. 15, 2024).

choose to proceed with an administrative remedy under Chapter 61, they "forego" their common law causes of action. 211 S.W. 3d at 465. Plaintiffs "cannot have it both ways"; if they want to pursue common-law remedies, they must "withdraw [their] claim with the TWC before the commission's decision became final." 211 S.W. 3d at 465; *accord Tricon Tool & Supply, Inc. v. Thumann*, 226 S.W.3d 494, 511 (Tex. App.—Houston [1st Dist.] 2006, pet. denied) ("When a claimant files a claim under the Payday Law, he is required to abide by the statute's provisions. To pursue common-law remedies after filing a claim under the Payday Law, a claimant must withdraw his claim *before* its decision becomes final." (citation omitted)). As pleaded in the amended complaint, the TWC claim is still active; there is no allegation that Moore withdrew the claim or that she is challenging a final administrative decision. (Docket Entry No. 6 ¶¶ 83, 92).

Because Moore cannot proceed on both an active TWC claim and common-law claims based on breach of contract, these claims are dismissed. *Desir v. Walmart, Inc*., No. 4:23-CV-00700, 2024 WL 1200350 (S.D. Tex. Feb. 8, 2024), *report and recommendation adopted sub nom. Desir v. Walmart Inc*, 2024 WL 1201625 (S.D. Tex. Mar. 20, 2024). Moore does not allege facts showing that she is challenging a final administrative decision or that she has met the statutory requirements for doing so, which include naming the TWC as a defendant. *See* TEX. LAB. CODE § 61.062(c). Moore may amend her complaint, consistent with Rule 11, to allege that the TWC claim was withdrawn or that she is properly challenging a final administrative decision. If she has withdrawn her TWC claim, Moore must also allege sufficient facts to state her contract-based claims, rather than vague allegations that she simply was not paid as much as she wanted to be paid.

It is not clear whether the filing of a TWC claim bars a plaintiff from asserting *all* common -law claims, or just common-law claims based on breach of contract. *See, e.g.*, *Byun v. Hong*, 641

S.W.3d 821, 826 (Tex. App.—Tyler 2022, no pet.) ("An employee asserting a claim pursuant to the Payday Law may choose to either file an administrative claim with the TWC under the Payday Law or a common law breach of contract claim in court.").  To the extent that any of Moore's tort or other non-contract common-law claims are not blocked by her filing of a claim with the TWC, however, the court agrees with Wireless that those claims are insufficiently pleaded.

First, Moore has failed to plausibly plead intentional infliction of emotional distress.  This tort is "first, and foremost, a 'gap-filler' tort, judicially created for the limited purpose of allowing recovery in those rare instances in which a defendant intentionally inflicts severe emotional distress in a manner so unusual that the victim has no other theory of redress." *Hoffman-La Roche, Inc. v. Zeltwanger*, 144 S.W.3d 438, 447 (Tex. 2004) (discussing *Standard Fruit & Vegetable Co. v. Johnson*, 985 S.W.2d 62, 68 (Tex. 1998)).  Intentional infliction of emotional distress claims are limited to circumstances in which the defendant's conduct was "extreme and outrageous." *Johnson v. Merrell Dow Pharms., Inc.*, 965 F.3d 31, 33 (5th Cir. 1992) (per curiam).  Nothing in Moore's amended complaint comes close to showing that Wireless's conduct meets that standard.

Second, Moore's claim for fraud fails to meet Rule 9's heightened pleading requirements, which requires "the who, what, when, where, and how" to be laid out. *Williams v. WMX v. Techs., Inc.*, 112 F.3d 175, 179 (5th Cir. 1997).  Despite its length, Moore's amended complaint does not allege a factual basis for most of these elements.  Who at Wireless (outside of, seemingly, Haworth, whose actions are not identified with any specificity) was responsible for making any false statements?  When exactly did these false statements occur?  Moore's conclusory allegations are insufficient to meet the Rule 9 standard. *See, e.g.*, *Ford v. Pangea Int'l Trading Co.*, Civ. Action No. H-25-916, 2025 WL 2977978, at *4 (S.D. Tex. Oct. 21, 2025). Moore's claim for negligent misrepresentation fails for similar reasons, both because none of the necessary facts to meet the

13

elements of this claim are sufficiently alleged and also because, as Wireless points out, this claim as pleaded is based on promises of future conduct only. *See Stolts v. Wells Fargo Bank, NA*, 31 F. Supp. 3d 876, 882 n.5 (S.D. Tex. Jan. 16, 2014) ("[A] promise of future action . . . cannot form the basis of a negligent-representation tort as a matter of law. Negligent misrepresentation must relate to a 'statement of existing fact rather than a promise of future conduct.'" (quoting *Scherer v. Angell*, 253 S.W.3d 777, 781 (Tex. App.—Amarillo 2007, no pet.))).

Finally, Moore brings a statutory claim for "Retaliation under Texas Labor Code." (Docket Entry No. 6 ¶¶ 91–98). She cites no specific provision of the Labor Code, and to the extent that she is trying to state a claim under Chapter 21, she has plainly failed to allege any facts supporting such a claim; there is no assertion that she engaged in "protected activity" under Chapter 21, among other issues.[7] Moore does not directly respond to Wireless's arguments about the deficiencies in this claim. "Generally, the failure to respond to arguments constitutes abandonment or waiver of the issue." *All About Prop., LLC v. Midland Mortg.*, No. 4:22-cv-1684, 2024 WL 1079226, at *5 (S.D. Tex. Feb. 8, 2024) (quoting *Kellam Servs.*, No. 3:12-cv-352-O, 2012 WL 12093735, at *3 (N.D. Tex. May 21, 2013), *aff'd sub nom.*, *Kellam v. Metrocare Servs.*, 560 F. App'x 360 (5th Cir. 2014)). Moore may amend her "retaliation" claim if she can properly state a claim for retaliation under Texas law.

## IV.     Conclusion

The court grants the motion to dismiss. (Docket Entry No. 10). Moore's claims are dismissed, without prejudice, except to the extent that she is treating Chapter 61 as creating a

---

[7] The court notes that Chapter 21 also contains an exhaustion requirement. *See, e.g.*, *Tapley v. Simplifile, LC*, Civ. Action No. 3:19-cv-00227-E, 2020 WL 208817, at *2 (N.D. Tex. Jan. 14, 2020).

private cause of action; that claim is dismissed, with prejudice, because amendment would be futile.  Moore has one final opportunity to amend and must do so no later than May 15, 2026.[8]

SIGNED on April 27, 2026, at Houston, Texas.

Lee H. Rosenthal
Senior United States District Judge

---

[8] Wireless also asserts that Moore's pleadings indicate the use of generative AI and point out cases she cites that do not exist.  (Docket Entry No. 10 at 20).  The court has checked those citations (*see, e.g.*, Docket Entry No. 7 at 2 (citing "Thomas v. City of San Marcos (W.D. Tex.)" and "Cole v. Sandler, 2014 WL 266501 (E.D. La.)")) and agrees they do not exist and are likely an indication of AI use (for example, the Westlaw number for the "Cole v. Sandler" citation leads to a Northern District of Texas case entitled *Cole v. Hunter*, which does not stand for the proposition that Moore cites "Cole v. Sandler" for).  The court warns Moore that "briefing 'built on AI-generated cases that stand for legal propositions in direct contravention of actual case law' 'is the epitome of baseless' and that, '[w]hile courts afford *pro se* litigants considerable leeway, that leeway does not relieve *pro se* litigants of their obligation under Rule 11 to confirm the validity of any cited legal authority.'"  *Willis v. U.S. Bank Nat'l Ass'n as Tr., Igloo Series Tr.*, No. 3:25-CV-516-BN, 2025 WL 1224273 (N.D. Tex. Apr. 28, 2025) (citing *Sanders v. United States*, 176 Fed. Cl. 163 (2025)).